**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Susan E. Himes**</u>

       **v.**                                    Civil No. 12-cv-321-PB
                                       Opinion No. 2014 DNH 002
<u>**Client Services Inc., et al.**</u>

<u>**MEMORANDUM AND ORDER**</u>

      This case arises from attempts made by defendants to collect a consumer debt that Susan Himes allegedly owes to Target National Bank.  Himes seeks damages based on alleged violations of several federal and state laws regulating the defendants' debt collection activities.  Law Offices Howard Lee Schiff, P.C., along with Adam Olshan and David Florio (both attorneys employed by Schiff), move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  I grant Olshan's and Florio's motions in full, and I grant Schiff's motion in part and deny it in part.

## I.  BACKGROUND

      On March 15, 2012, Himes received a letter from Client Services notifying her that Target had referred to it an unpaid

consumer credit account balance of $1,002.71 for collection.
Doc. No. 66-4.  The letter includes a reference number, 1213837,
and a Target account identification number, 00024480147.[1]  Id.
On March 29, 2012, Himes sent Client Services a letter disputing
the debt, demanding validation pursuant to the Fair Debt
Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g, and
requesting that Client Services refrain from contacting her by
telephone.  Doc. No. 32-2.  Himes received no further
communications from Client Services.  Doc. No. 66.

On May 19, 2012, Himes received a second collection letter,
this time from Schiff.  Doc. No. 66-4.  The letter sought
payment of $1,089.95 that Himes allegedly owed to Target and
included a "CN"[2] number, W70803.  Id.  The letter states in part:

> THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY
> FURTHER INFORMATION OBTAINED WILL BE USED FOR THAT
> PURPOSE.  THIS COMMUNICATION IS FROM A DEBT COLLECTOR.
>     . . . .
>                       VALIDATION NOTICE
>     If you do not dispute the validity of the debt,
> or any portion thereof, within 30 days of the receipt
> of this letter, the debt collector will assume it is
> valid.  If you dispute the validity of this debt or
> any portion thereof in writing within 30 days of

---

[1] Himes claims that the letter states the account number as
00000000147, see Doc. No. 66, but an undisputed copy of the
letter includes no such number.  See Doc. No. 66-4.

[2] Schiff explains that a CN number is the internal file number
that it assigns to each collection referral it receives from a
creditor.  See Doc. Nos. 62-1, 66-4, 66-6.

> receipt of this letter, we will obtain and mail you verification of the debt or a copy of a judgment against you.  At your request in writing within 30 days of receipt of this letter, we will provide you with the name and address of the original creditor, if different from the current creditor.

Id.  On May 23, 2012, Himes sent Schiff a demand for validation and a request to refrain from telephone communication. Doc. No. 66-5.  In response, Himes received a letter from Schiff on June 4, 2012 containing a copy of Himes's final Target credit card account statement, dated May 8, 2012. Doc. No. 66-6.  The statement includes Target's account identification number, 00024480147, along with the final four digits of the credit card account number, 5461, as well as Schiff's handwritten CN number in the upper margin.  Id.  It lists Himes's new balance as $1089.95, which includes a $35.00 late payment fee in addition to the previous balance of $1,054.95.  Id.  The statement also includes Target's mailing address on the bill payment slip.  Id. Himes disputes that the statement reflects a valid debt. Doc. No. 66.

Himes alleges that she received two calls on her personal cell phone from an automated dialer owned by Schiff on August 8 and 15, 2012, despite having previously demanded that Schiff refrain from all telephone contact.  Id.  The defendants deny that they ever called Himes. Doc. Nos. 63-2, 63-3, 63-4.

On July 24, 2012, Target, by its attorneys Olshan and Florio, served Himes with a small claims complaint in New Hampshire Circuit Court.  The complaint states that on or before May 8, 2012, Himes owed a delinquent balance of $1089.95 on account number 4352377599305461 and Target seeks damages for the current balance due, $1,054.95.  Doc. No. 66-7.  The court entered a judgment of $1,139.98[3] for Target on February 27, 2013 after making the following findings of fact:

> Between 2007 and 2012 . . . . monthly statements were forwarded to Susan E. Himes at [her home] address, and during that time small electronic payments were made and credited to that account. Payments ceased and the account was charged off leaving a balance of $1,054.95.
> Ms. Himes testified under oath that she has no recollection of ever having had a Target credit card; she has no recollection of ever receiving any invoices from Target; had no recollection of ever making any payments on the account.  She maintains that the plaintiff has failed to prove that the account is hers.  Although she has had full discovery in this matter, she provided no documentation to the court that the electronic payments credited to the account did not come from her bank accounts.
> The court finds that [Target] has met its burden of proof, and the court is well satisfied that the account in question belongs to Ms. Himes.

Target Nat'l Bank v. Himes, No. 12-SC-206, slip op. at 1-2 (N.H. Cir. Ct. Feb. 27, 2013); Doc. No. 63-5.

---

[3] This sum includes Target's requested damages plus $72.00 in costs and $13.03 in interest.  Doc. No. 63-5.

On August 23, 2012, Himes filed a pro se complaint in this court alleging that each defendant had violated the FDCPA, 15 U.S.C. §§ 1692e(2, 10), 1692f(1), 1692g(a)(1)(2)(4)(5)(b), 1692g(b), and New Hampshire's Unfair, Deceptive or Unreasonable Collection Practices Act ("UDUCPA"), N.H. Rev. Stat. Ann. § 358-C:3(VII-VIII, X), and that Schiff had violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii). Doc. No. 1.  Himes amended her complaint on November 6, 2012 to add a claim against all defendants under New Hampshire's Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. § 358-A:2. Doc. No. 28.  On April 22, 2013, I granted Client Services' motion to dismiss the amended complaint for failure to state a claim.  Doc. No. 43.  Following discovery, the remaining defendants moved for summary judgment on October 8, 2013.  Doc. Nos. 62, 63.  Himes filed an objection to the motion on December 4, 2013.  Doc. No. 66.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is considered genuine if the evidence allows a

reasonable jury to resolve the point in favor of the nonmoving party, and a fact is considered material if it "is one 'that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, I examine the evidence in the light most favorable to the nonmoving party.  Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

The party moving for summary judgment bears the initial burden of identifying the portions of the record it believes demonstrate an absence of disputed material facts.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In determining what constitutes a material fact, "we safely can ignore 'conclusory allegations, improbable inferences, and unsupported speculation.'"  Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

I hold pro se pleadings to a less stringent standard than those drafted by lawyers and liberally construe them in favor of the pro se party.  See Estelle v. Gamble, 429 U.S. 97, 106 (1979); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

That review ensures that pro se pleadings are given fair and
meaningful consideration.  <u>See</u> Eveland v. Dir. of C.I.A., 843
F.2d 46, 49 (1st Cir. 1988).


### III.  <u>ANALYSIS</u>

**A.   <u>Count I: UDUCPA</u>**

Himes alleges that the defendants violated section 358-
C:3(VII-VIII, X) of the New Hampshire Revised Statutes by
"falsely represent[ing] the character, extent or amount of the
debt or its status in a[] legal proceeding by attempting to
collect various amounts at various times from [Himes] for the
same alleged account, as well as fees or other charges not
legally added to any existing obligation that was expressed in
the authorized agreement and legally charged to [Himes]."  Doc.
No. 28.  This claim, which tracks the statutory language, fails
because Himes has presented no supporting evidence that a
reasonable jury could credit.

Himes first notes that the statement supplied by Schiff in
response to her validation request "did not in any way show how
the amount of the alleged debt purported to be owed had changed
from the previous amount demanded by Client Services to the new
and higher amount then being demanded."  Doc. No. 66.  That may

be true, but it is irrelevant.  The statement clearly indicates that Himes's year-to-date late fees and interest totaled $237.73 as of May 8, 2012, making it obvious to a reasonable observer that the account balance had increased incrementally during the first five months of 2012.  See Doc. No. 66-6.  There is thus no mystery in the additional $87.24 demanded by Schiff two months after Client Services' first collection attempt.  Even if there were, Schiff was under no obligation to provide an explanation for the amount previously demanded by an unrelated debt collector.

Himes also states that she was confused by the various account numbers and balances referenced in the letters and state court complaint, see Doc. No. 66, but her subjective confusion regarding these objectively clear figures is not proof of a misrepresentation or attempt to collect any sum that Himes did not actually owe Target.  As discussed above, the statement indicates that Himes's account balance had increased by $237.73 in 2012 due to accumulated late fees and interest.  The statement explicitly notes that Himes's April balance, $1,054.95, had increased to $1,089.95 in May – the exact amount referenced in Schiff's demand letter - due to the addition of a monthly $35.00 late fee.  Doc. Nos. 66-4, 66-6.  The state court

8

complaint references the same April and May balances.  See Doc. Nos. 66-6, 66-7.  Target presumably forgave Himes the final $35.00 late fee when it pursued, and was awarded, a $1054.95 judgment in state court.  See Doc. Nos. 63-5, 66-7.  Despite Himes's contention, the decision to sue for a lower amount than previously demanded cannot be reasonably characterized as "misleading, deliberate and deceptive."  See Doc. No. 66.

This same reasoning applies to Himes's complaints about the misleading nature of the various account and reference numbers listed on the letters and state court documents.  Although supposedly confused by an incomprehensible array of account numbers, Himes fails to mention that the Target account identification numbers listed on both the Client Services letter and the statement match perfectly, as do the last four digits of the Target credit card account numbers listed on the statement, the complaint, and the state court notice of decision.  See Doc. Nos. 63-5, 66-4, 66-6, 66-7.  The two numbers that do differ - those on the letters from Client Services and Schiff - are simply internal reference numbers used by those organizations to track a particular collection claim.  See Doc. No. 66-4.  There is no cause for confusion here, and certainly no hint of

misrepresentation or an attempt by the defendants to collect a
sum that Himes did not legally owe.

Because Himes has presented no evidence sufficient to
survive summary judgment on her UDUCPA claims, I grant the
defendants' motions with respect to Count I.

**B.    Count II: CPA**

Himes bases her CPA claims on section 358-C:4(VI) of the
New Hampshire Revised Statutes, which states that "[a]ny
violation of the provisions of [UDUCPA] shall also constitute an
unfair and deceptive act or practice within the meaning of RSA
358-A:2 and may be enforced by the attorney general pursuant to
RSA 358-A."  Because Himes's UDUCPA claims fail for the reasons
discussed above, her CPA claims necessarily fail as well.[4]  I
therefore grant the defendants' motions for summary judgment
with respect to Count II.

**C.    Count III: FDCPA**

Himes alleges that the defendants violated 15 U.S.C.
§ 1692e(2) by "misrepresenting the character, amount, or legal
status of the alleged debt;" § 1692e(10) by "making a false

---

[4] I assume for the purposes of deciding this motion that section
358-C:4(VI) provides Himes with a private right of action to
enforce chapter 358-A, although the plain language of the
statute seems to indicate otherwise.  I need not decide that
issue, which the New Hampshire courts have yet to address,
because Himes's CPA claims fail in any event.

representation of the alleged debt and using a deceptive means
to collect the debt or obtain information about [Himes];"
§ 1692f(1) by "attempting to collect various amounts (including
any interest, fee, charge, or expense incidental to the
principal obligation) that was not expressly authorized by the
agreement creating the debt or permitted by law;" and § 1692g(b)
by failing to provide a sworn accounting ledger and the signed
loan agreement in response to Himes's request for validation.
Doc. No. 28.  None of these claims have merit.[5]

The claims under § 1692e(2) and the first clause of
§ 1692e(10) are the same as Himes's UDUCPA claims and fail for
the same reasons.  The claims under § 1692e(10) that the
defendants "us[ed] a deceptive means to collect the debt or
obtain information about [Himes]" also fail because Himes has
presented no evidence of even remotely deceptive behavior.  As
noted earlier, Himes states that she was confused by the various
numbers and balances referenced in successive letters and in the
state court complaint, but these references were not in any way
deceptive.  Himes also alleges that Schiff's use of law firm
letterhead on a letter from a debt collector was somehow

---

[5] Because all the FDCPA claims against Olshan and Florio fail
even assuming they are "debt collectors" under 15 U.S.C.
§ 1692a(6), I need not decide that disputed issue.

misleading, even though Schiff is, in fact, both a law firm and a debt collector.  She provides no explanation for this assertion, and offers no other evidence to shore up her claims of deceptive behavior on the part of any defendant.  See Doc. No. 66.

    Himes's claim under § 1692f(1), that the defendants attempted to collect sums not authorized by the credit card agreement, also fails.  She has offered no evidence to contradict either the statement, which indicates that she owed Target at least $1089.95 as of May 8, 2012, or the state court judgment, which indicates that she owed Target at least $1,139.98 as of February 27, 2013.[6]  That Himes was told she owed lesser amounts on other dates is of no matter, as discussed above.  More generally, Himes's demand that the defendants produce evidence that the sums they attempted to collect were authorized by her credit card agreement "turns the burden of proof on its head."  See Moore v. Mortg. Elec. Registration

---

[6] Although the defendants have not raised collateral estoppel as an affirmative defense, see Fed. R. Civ. P. 8(c)(1), the validity of the debt would likely be established as a result of the state court judgment.  See, e.g., In re Town of Seabrook, 163 N.H. 635, 654 (2012) ("[T]he doctrine of collateral estoppel bars a party to a prior action . . . from relitigating any issue or fact actually litigated and determined in the prior action." (alteration in original) (quoting Gray v. Kelly, 161 N.H. 160, 164 (2010)).

Sys., Inc., 2013 DNH 065, 11 ("[T]he defendants are not required to prove that they did not violate the FDCPA; rather, the [plaintiff] must prove that they did.").  On this point, Himes does not come close to meeting her burden.

Finally, Himes alleges under § 1692g(b) that Schiff's method of validation is insufficient because the defendants never produced a sworn accounting ledger, affidavit, or signed loan agreement to prove her legal obligation to pay the sums demanded, and because the "defendants['] letter . . . stated they would provide the creditor's address and that is also missing from their validation." Doc. No. 66.  She also claims that Schiff violated § 1692g(b) by "not ceasing collections after being notified in writing within thirty days of the alleged debt being disputed." Doc. No. 28.  As an initial matter, Himes's claim regarding a failure to provide the creditor's address is simply incorrect; the statement that Schiff sent in response to her validation request clearly includes Target's mailing address on the bill payment slip. Doc. No. 66-6.  Furthermore, Himes's belief that validation requires disclosure of the signed loan agreement, a sworn accounting ledger, and affidavits attesting to the current status and validity of the debt grossly overstates a debt

13

collector's obligations under the FDCPA.  To sufficiently
validate a debt, the debt collector need only demonstrate that
the creditor has provided some evidence that the debtor owes the
specific amount demanded; a credit card statement indicating the
delinquent balance serves that purpose.  See, e.g., Fassett v.
Shermeta, Adams & Von Allmen, P.C., No. 1:12-CV-36, 2013 WL
2558279, at *6-7 (W.D. Mich. June 11, 2013); Gough v. Bernhardt
& Strawser, PA, No. 1:05CV00398, 2006 WL 1875327, at *5
(M.D.N.C. June 30, 2006); Erickson v. Johnson, No. 05-427
(MJD/SRN), 2006 WL 453201, at *7 (D. Minn. Feb. 22, 2006).
Schiff's June 4, 2012 letter and the enclosed statement
"confirmed in writing the identity of the creditor and the
amount which plaintiff owed as of the date of the letter.
Nothing more is required under § 1692g."  Fassett, 2013 WL
2558279, at *8 (citing Chaudhry v. Gallerizzo, 174 F.3d 394, 406
(4th Cir. 1999); Smith v. Transworld Sys., Inc., 953 F.2d 1025,
1031-32 (6th Cir. 1992); Rudek v. Frederick J. Hanna & Assocs.,
P.C., No. 1:08-cv-288, 2009 WL 385804, at *2 (E.D. Tenn. Feb.
17, 2009)).  Because the defendants properly validated the debt
in the amount demanded, they were free to continue their debt
collection activities, including filing suit against Himes in
state court.

14

Accordingly, I grant the defendants' motion for summary judgment with respect to Count III.

**D.    <u>Count IV: TCPA</u>**

Himes alleges that Schiff violated 47 U.S.C. § 227(b)(1)(A)(iii) by "willfully calling [Himes's] wireless phone using an automated dialer on [two occasions] without [Himes's] express consent to do so." Doc. No. 28.  In support of this claim, she submits two photos of her cell phone showing missed calls from "Howard Schiff" on August 8 at 12:48 p.m. and August 15 at 1:24 p.m.,[7] along with a third photo indicating that telephone number 866-234-7606 is assigned to "Howard Schiff."[8] Doc. No. 66-8.  Schiff's first letter to Himes states "[w]e suggest that you call us at (866) 234-7606 to make a payment." Doc. No. 66-4.  Himes also submits a copy of Schiff's public web page, which notes that its staff "utilize[s] state of the art call management and predictive dialer technology to maximize

---

[7] Neither cell phone image indicates the year.

[8] Of course, Himes could easily have assigned the name "Howard Schiff" to some other phone number appearing in her list of missed calls prior to taking the first two photos, then reassigned "Howard Schiff" to 866-234-7606 before taking the third photo.  Himes has submitted an affidavit attesting that the photos reflect the alleged calls, however, and thus any question regarding their validity requires a credibility determination by the jury.

contact" with debtors.[9]  Doc. No. 66-3; see also In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd. 559, 566 (2008) ("[A] predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers.").

Schiff denies that it ever called Himes, presenting affidavits to that effect along with a copy of its activity log for Himes's collection account, which includes notations relating to Himes's request that Schiff refrain from telephone communication along with the phrase "WRITTEN COMM ONLY" on May 30, 2012.[10]  Doc. Nos. 45-5, 63-2, 63-3, 63-4.  In the alternative, Schiff argues that the TCPA does not apply to debt

---

[9] The web page does not state that Schiff uses a predictive dialer for all telephone contact with debtors; thus it is of limited probative value on the issue of whether Schiff used a predictive dialer to make the two calls alleged by Himes.  The evidence is nonetheless relevant, and I find that it is minimally sufficient to avoid summary judgment on this element of Himes's TCPA claim.

[10] Although Schiff appears to rely on this activity log as evidence that no phone calls were ever made to Himes, it provides no explanation of how the log is maintained or the circumstances under which calls are logged in the normal course of business.  On its face, it is unclear that calls are ever recorded in a debtor's activity log.  See Doc. No. 45-5.  Somewhat surprisingly, no party has submitted cell phone or autodialer call records listing all incoming and outgoing calls on a particular date, which would likely be dispositive of this issue.  Nonetheless, the evidence that Himes has submitted is minimally sufficient to survive summary judgment on her TCPA claim.

collection calls because such calls are "made for a commercial
purpose but do[] not . . . introduce an unsolicited
advertisement or constitute a telephone solicitation" and are
"made to a[] person with whom the caller has an established
business relationship at the time the call is made." Doc. No.
62-1 (quoting 47 C.F.R. § 64.1200(a)(2)(iii-iv)[11]).

Both sides have submitted evidence in support of their
positions on the first issue - whether Schiff used an autodialer
to call Himes's cell phone on the dates alleged - albeit not
enough to cause a reasonable jury to reach only one conclusion.
Consequently, that question presents an issue of material fact
for the jury.  Schiff's second argument – that debt collection

---

[11] 47 C.F.R. § 64.1200 was amended on October 17, 2013.  The
analogous provisions to those quoted above now read as follows:

> No . . . entity may . . . [i]nitiate any telephone
> call to any residential line using an artificial or
> prerecorded voice . . . without the prior express
> written consent of the called party, unless the call .
> . . [i]s made for a commercial purpose but does not
> include or introduce an advertisement or constitute
> telemarketing.

§ 64.1200(a)(3)(iii).

> No . . . entity shall initiate any telephone
> solicitation to . . . [certain] residential telephone
> subscriber[s] . . . . but such term does not include a
> call . . . [t]o any person with whom the caller has an
> established business relationship.

§ 64.1200(c), -(f)(14)(ii).

calls are not governed by the TCPA's restrictions – is based on an incorrect statement of the relevant law.

The TCPA makes it unlawful "for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii).  Schiff attempts to avoid this prohibition by claiming that "all debt collection circumstances involve a prior or existing business relationship" and are therefore exempt from the TCPA's restrictions.  Doc. No. 62-1 (quoting In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 FCC Rcd. 8752, 8771-72 (1992)).  Schiff then cites to a 2008 FCC Ruling for the proposition that "calls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing," and thus "calls regarding debt collection . . . are not subject to the TCPA's separate restrictions on 'telephone solicitations.'"  Id. (quoting 23 FCC Rcd. at 565).

Those statements may be true, but they concern calls made to residential land line phones, not cell phones, and are thus irrelevant here.  Indeed, the immediately preceding text of the

18

2008 Ruling emphasizes that "the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. . . .  [T]his prohibition applies regardless of the content of the call, and is not limited only to calls that constitute 'telephone solicitations.'" 23 FCC Rcd. at 565 (footnote omitted). Contrary to Schiff's contention, the 2008 Ruling makes quite clear that "not all debt-collection calls to cell phones are categorically exempted from the TCPA." See Conklin v. Wells Fargo Bank, N.A., No. 6:13-CV-1246-ORL-37, 2013 WL 6409731, at *3 (M.D. Fla. Dec. 9, 2013) (emphasis omitted) (citing 23 FCC Rcd. at 564-65).

Although the First Circuit has yet to address the issue, see Jones v. FMA Alliance Ltd., No. 13-11286-JLT, 2013 WL 5719515, at *1 n.10 (D. Mass. Oct. 17, 2013), I agree with the Third Circuit's view that "[t]he only exemptions in the TCPA that apply to cellular phones are for emergency calls and calls made with prior express consent.  Unlike the exemptions that apply exclusively to residential lines, there is no established business relationship or debt collection exemption that applies

19

to autodialed calls made to cellular phones."[12] Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 273 (3d Cir. 2013) (citing 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1)(iii)).  No emergency is alleged in this case.  Consequently, if Schiff used an autodialer to call Himes's cell phone - whether for debt collection, solicitation, or any other purpose - it required her prior express consent.[13]  See id.; see also 23 FCC Rcd. at 567 ("[W]here the [cell phone] subscriber has not made the number available to the creditor regarding the debt, we expect debt collectors . . . to comply with the TCPA's prohibition on telephone calls using an autodialer . . . to wireless numbers." (footnote omitted)).

Even if Schiff had such consent at one time by virtue of Himes providing her cell phone number to Target when she applied

---

[12] A narrow exemption also exists for autodialed calls "placed to a wireless number that has been ported from wireline service . . . ; not knowingly made to a wireless number; and made within 15 days of the porting of the number from wireline to wireless service . . . ."  47 C.F.R. § 64.1200(a)(1)(iv).  There is no allegation that Himes's cell phone number was ever ported from a land line.

[13] Assuming that Schiff believed in good faith that it was calling Himes's residential land line or otherwise called her cell phone inadvertently, it would still be liable under the TCPA absent Himes's prior express consent.  See Gager, 727 F.3d at 273 n.6 (citing Breslow v. Wells Fargo Bank, N.A., 857 F. Supp. 2d 1316, 1322 (S.D. Fla. 2012); In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 19 FCC Rcd. 19,215, 19,219-20 (2004)).

for a credit card, see 23 FCC Rcd. at 564 ("[T]he provision of a
cell phone number to a creditor, e.g., as part of a credit
application, reasonably evidences prior express consent . . . to
be contacted at that number regarding the debt."), Himes
unambiguously revoked that consent prior to the alleged phone
calls.  See Doc. No. 66-5; see also Gager, 727 F.3d at 268
("[T]he TCPA affords [a plaintiff] the right to revoke her prior
express consent to be contacted on her cellular phone via an
autodialing system and . . . there is no temporal limitation on
that right.").  In any event, the burden regarding the issue of
consent is on Schiff, not Himes, and Schiff has presented no
evidence on that point to support its motion for summary
judgment.  See, e.g., Grant v. Capital Mgmt. Servs., L.P., 449
F. App'x 598, 600 n.1 (9th Cir. 2011) ("'[E]xpress consent' is
not an element of a TCPA plaintiff's prima facie case, but
rather is an affirmative defense for which the defendant bears
the burden of proof." (citing 23 FCC Rcd. at 565)); Conklin,
2013 WL 6409731, at *3 ("As Plaintiff has pled that he did not
give consent or alternatively revoked consent, he has adequately
stated a TCPA claim, and Defendant's motion is due to be denied
on that ground.  It will be Defendant's task to prove consent at
the summary-judgment stage." (citation omitted)).

Accordingly, I deny Schiff's motion for summary judgment with respect to Count IV.

## IV.   CONCLUSION

For the foregoing reasons I grant Olshan's and Florio's motions for summary judgment in full (Doc. No. 63), and I grant Schiff's motion for summary judgment in part and deny it in part (Doc. No. 62).[14]  Only Himes's Count IV TCPA claim against Schiff remains viable.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

January 2, 2014

cc:   Susan E. Himes, pro se
      Karen J. Wisniowski, Esq.

---

[14] The defendants requested oral argument on their motions, Doc. Nos. 62, 63, to which Himes objected.  Doc. No. 65.  I deny this request because it will not assist in the resolution of the motions.  See LR 7.1(d).